917 F.2d 1449
 Jacqueline WALKER, Administratrix of the Estate of Jerry
Fails, Plaintiff-Appellee and Cross-Appellant (89-6107),
v.
Steven NORRIS and Michael Dutton, Defendants-Appellants
(89-5831) and Cross-Appellees,
Jonathan House; Donald Ritz; and Donald Jordan,
Defendants-Appellants (89-5831).
 Nos. 89-5831, 89-6107.
 United States Court of Appeals,
Sixth Circuit.
 Argued July 27, 1990.
Decided Nov. 1, 1990.
Rehearing Denied Dec. 20, 1990.
 
 Ronald W. McNutt (argued), Williams & Dinkins, Nashville, Tenn., Keith W. Veigas, Jr., Veigas & Cox, Birmingham, Ala., for plaintiff-appellee cross-appellant.
 Steven E. Winn, Asst. Atty. Gen., Charles W. Burson, Atty. Gen., Michael W. Catalano, Deputy Atty. Gen. (argued), Nashville, Tenn., for defendants-appellants cross-appellees.
 Before KEITH and GUY, Circuit Judges, and ENSLEN, District Judge.*
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 In this action involving 42 U.S.C. Sec. 1983 claims for eighth and fourteenth amendment substantive due process violations as well as a state law negligence claim stemming from the stabbing death of prison inmate Jerry Fails, the defendants appeal from a judgment entered on a jury verdict in favor of plaintiff Jacqueline Walker, the administratrix of Fails' estate. The plaintiff cross-appeals from an adverse judgment on the section 1983 eighth amendment claim against defendants Steven Norris, Michael Dutton, and Jonathan House and the district court's order directing a verdict in favor of defendants Norris and Dutton on the section 1983 substantive due process claim. On review, we affirm the judgment imposing section 1983 liability upon defendants Donald Ritz and Donald Jordan for violating Fails' eighth amendment rights. With respect to the plaintiff's section 1983 substantive due process claim, we find that such a theory is not available to supplement the plaintiff's eighth amendment claim, and therefore reverse the finding of liability against defendants Ritz, Jordan, and House, and affirm the entry of a directed verdict for defendants Norris and Dutton. We also affirm the district court's entry of a directed verdict in favor of Norris and Dutton on the plaintiff's section 1983 supervisory liability theory. In light of the immunity provided to state officers and employees under Tennessee law, we vacate the judgment against the defendants on the plaintiff's state law negligence claim and remand that cause of action for further consideration. Finally, we affirm the compensatory and punitive damage awards rendered by jury verdict against defendants Ritz and Jordan.
 
 I.
 
 2
 On August 17, 1986, Fails was working as an inmate janitor at the Tennessee State Penitentiary (the prison). While engaged in his task of cleaning the walkways in Unit IV of the prison, he exchanged words with inmate Bert Eggleston. Eggleston, then under the influence of an alcoholic beverage called "julep" that was made in the prison,[1] picked up a knife hidden in his cell and chased Fails to the metal grill door leading to the prison yard.[2] Defendant Jordan, a prison corrections officer, observed the chase that initially ended at the Unit IV door. When Fails reached the door to the yard, he discovered that it was locked. Defendant Ritz, a corrections officer charged with the responsibility of guarding the outside of the door, ignored Fails' pleas that he was being chased by a man with a knife intent on killing him.[3] Ritz was talking to several other inmates on the opposite side of the door and explained that he would not open the door to let Fails into the yard.
 
 
 3
 Fails' arrival at the door prompted Eggleston to retreat to a nearby stairwell, but Eggleston attacked Fails once he realized that Fails could not get through the door to the yard. As the attack progressed, Jordan and corrections officer House simultaneously arrived on the scene to separate the inmates. Ritz then opened the Unit IV door, and corrections officer Randy Bruso grabbed Eggleston's left wrist. Jordan, however, pulled Bruso away from Eggleston, stating, "Wait a minute, he's got a shiv [knife]." Fails passed through the Unit IV door into the yard, but no one closed the door and Eggleston followed Fails. When Eggleston overtook Fails in the yard, Fails implored the guards to help him, asking, "You all going to allow him to kill me?" Soon thereafter, Eggleston stabbed Fails to death as the corrections officers who followed the two into the yard watched and other guards arrived from inside the prison compound. After Fails slumped to the ground, Corporal Cook told Eggleston, "You've done what you were trying to do, hand me the knife." Eggleston did so, and Fails was carried from the prison yard.
 
 
 4
 Following Fails' death, Jacqueline Walker was appointed to serve as administratrix of his estate. She filed a complaint in the United States District Court for the Northern District of Alabama setting forth section 1983 claims against Tennessee Department of Corrections Commissioner Norris, prison warden Dutton, and corrections officers House, Ritz, and Jordan for deprivation of eighth amendment and fourteenth amendment substantive due process rights. The plaintiff further alleged a wrongful death claim under Tennessee law sounding in negligence against all five defendants.[4] After the action was transferred to the United States District Court for the Middle District of Tennessee, the district court conducted a jury trial in September and October of 1988. Before submitting the entire case to the jury, the district court denied a motion filed by defendants House, Ritz, and Jordan for a directed verdict on the federal claims, and reserved ruling on a motion for directed verdicts filed by Norris and Dutton with respect to all federal and state claims and by House, Ritz, and Jordan with respect to the state law claim.
 
 
 5
 On October 21, 1988, the jury returned a verdict on all of the claims. The jury found against defendants Ritz and Jordan, but in favor of defendants Norris, Dutton, and House on the section 1983 eighth amendment claim. The jury further found all five defendants liable to the plaintiff on the section 1983 substantive due process claim, and imposed supervisory liability against defendants Norris and Dutton. The jury similarly returned a verdict for the plaintiff and against all five defendants on the state law negligence claim. Finally, the jury assessed a total of $175,000 in compensatory damages against the defendants, and imposed varying amounts of punitive damages against each of the defendants totalling $39,500.[5] The district court then granted the reserved motion of defendants Norris and Dutton for a directed verdict on the plaintiff's section 1983 substantive due process and supervisory liability claims,[6] but denied the reserved motions for directed verdicts in all other respects. The defendants unsuccessfully moved for judgment notwithstanding the verdict or a new trial, and then filed a timely notice of appeal. The plaintiff subsequently cross-appealed the adverse judgment on the eighth amendment claim against defendants Norris, Dutton, and House as well as the district court's order granting a directed verdict for defendants Norris and Dutton on the section 1983 substantive due process and supervisory liability claims. We shall address the issues raised with respect to the federal claims, the state negligence claim, and the damage awards seriatim.
 
 II.
 
 6
 Section 1983 authorizes "any citizen of the United States or other person within the jurisdiction thereof" to pursue "an action at law [or] a suit in equity" against "[e]very person who, under color of" state law, causes "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]" See 42 U.S.C. Sec. 1983. Although "Sec. 1983 by itself does not protect anyone against anything[,]" Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617, 99 S.Ct. 1905, 1916, 60 L.Ed.2d 508 (1979), the statute "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States...." Lugar v. Edmondson Oil Co., 457 U.S. 922, 924, 102 S.Ct. 2744, 2747, 73 L.Ed.2d 482 (1982). Here, the plaintiff has relied upon both the eighth and the fourteenth amendments to support section 1983 claims against the various defendants for both direct and supervisory liability.
 
 A. Eighth Amendment
 
 7
 The eighth amendment, which prohibits infliction of "cruel and unusual punishment," encompasses the proscription of "deliberate indifference" to the serious needs of prisoners. See, e.g., Estelle v. Gamble, 429 U.S. 97, 102-05, 97 S.Ct. 285, 290-92, 50 L.Ed.2d 251 (1976). On several occasions, we have held that "deliberate indifference" of constitutional magnitude may occur when prison guards fail to protect one inmate from an attack by another.[7] See, e.g., Roland v. Johnson, 856 F.2d 764, 769-70 (6th Cir.1988); McGhee v. Foltz, 852 F.2d 876, 880-81 (6th Cir.1988). Here, the jury found that defendants Ritz and Jordan violated Fails' eighth amendment rights by failing to prevent Eggleston from killing Fails. We agree.[8] Viewing the evidence in the light most favorable to the plaintiff, see Frost v. Hawkins County Bd. of Educ., 851 F.2d 822, 826 (6th Cir.) (articulating standard of review for denial of directed verdict and JNOV motions), cert. denied, 488 U.S. 981, 109 S.Ct. 529, 102 L.Ed.2d 561 (1980), the jury could have concluded that officers Ritz and Jordan had opportunities to prevent the stabbing death: (1) by opening the door to the yard to permit Fails to elude Eggleston; (2) by restraining Eggleston at the door; (3) by shutting the door before Eggleston could follow Fails into the yard; and (4) by intervening when Eggleston attacked Fails in the yard as the guards looked on. The officers' inaction, when viewed in the most favorable light from the plaintiff's perspective, amounted to a callous disregard for Fails' safety despite obvious notice of imminent danger. Such conduct constituted the type of "deliberate indifference" that we characterized in Roland as " 'obdurate' or 'wanton.' " See Roland, 856 F.2d at 769. Accordingly, the judgment against defendants Ritz and Jordan for violating Fails' eighth amendment rights is AFFIRMED.[9]
 
 
 8
 With respect to defendants Norris, Dutton, and House, the jury returned a verdict against the plaintiff on the section 1983 eighth amendment claim. The plaintiff requests a new trial on this claim because of an alleged flaw in the jury instruction concerning deliberate indifference. We have explained that "[a] party is not entitled to a new trial based upon alleged deficiencies in the jury instructions unless the instructions, taken as a whole, are misleading or give an inadequate understanding of the law." Bowman v. Koch Transfer Co., 862 F.2d 1257, 1263 (6th Cir.1988). Here, we find no such error. The district court furnished the jury with the following definition of deliberate indifference:
 
 
 9
 A defendant acts with deliberate indifference if he causes unnecessary and wanton infliction of pain on the decedent by deliberately disregarding a serious threat to the decedent's safety after actually becoming aware of that threat. A mere inadvertent or negligent failure to adequately protect the decedent does not constitute deliberate indifference.
 
 
 10
 The plaintiff offered an alternative instruction explicitly including reckless disregard within the definition of deliberate indifference, but the district court rejected this proposal. While we recognize that the concept of deliberate indifference cannot necessarily be reduced to a single definition universally applicable to all possible occurrences within a prison, we find that the district court properly chose not to expressly instruct the jury in terms of "reckless disregard." Our decision in McGhee makes clear that, in view of "recent pronouncements of the Supreme Court, even the reference ... to 'gross negligence' is no longer valid." McGhee, 852 F.2d at 881. The district court selected a definition of deliberate indifference that expressly (and appropriately) excluded such negligent conduct. Then, in instructing the jury on the plaintiff's substantive due process claim, the district court used the terms "reckless disregard" and "gross negligence" as interchangeable. Consequently, if the district court had included "reckless disregard" in the definition of deliberate indifference, the jury might well have erroneously concluded that gross negligence could support a section 1983 eighth amendment claim. Such a result clearly would have been inappropriate. Because the jury charge in this case correctly defined "deliberate indifference" by precluding the jury from finding an eighth amendment violation predicated upon gross negligence, we AFFIRM the judgment in favor of defendants Norris, Dutton, and House on the plaintiff's section 1983 eighth amendment claim.
 
 
 11
 B. Fourteenth Amendment Substantive Due Process
 
 
 12
 The fourteenth amendment forbids state actors to "deprive any person of life, liberty, or property without due process of law[.]" See U.S. Const. amend. XIV, Sec. 1. We have recognized that this amendment has a substantive component that "protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action[,]" Gutzwiller v. Fenik, 860 F.2d 1317, 1328 (6th Cir.1988), but we have admitted that this notion is "ephemeral" and "somewhat vague." See id. The vague quality of substantive due process is evinced by the widely differing definitions of the appropriate standard for culpability ranging from "gross negligence," see, e.g., Nishiyama v. Dickson County, Tennessee, 814 F.2d 277, 282 (6th Cir.1987) (en banc ), to "conduct that shocks the conscience." See, e.g., Whitley v. Albers, 475 U.S. 312, 327, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986). Here, the district court's instructions permitted the jury to impose liability upon a finding of "reckless disregard or gross negligence," thereby providing a substantially lower threshold than under the eighth amendment. Such disparity between the substantive due process and eighth amendment standards seems plainly incompatible with the Supreme Court's decision in Albers. Addressing a prisoner's section 1983 claims under both the eighth amendment's and the fourteenth amendment's substantive due process component, the Court utilized the standard of "conduct that shocks the conscience," rather than gross negligence, to analyze and ultimately reject the plaintiff's section 1983 substantive due process cause of action. Id. at 327, 106 S.Ct. at 1088. This approach indicates that gross negligence cannot support a section 1983 substantive due process claim in the prison context. Recent developments in the Supreme Court and this circuit, however, suggest a more fundamental flaw in the plaintiff's section 1983 substantive due process claim.
 
 
 13
 In McDowell v. Rogers, 863 F.2d 1302 (6th Cir.1988), we rejected the widely-held conception that a plaintiff subjected to excessive force could assert section 1983 claims for deprivation of both fourth amendment and fourteenth amendment substantive due process rights. See id. at 1306. We reasoned that, "[i]n the face of a constitutional commandment" expressly proscribing unreasonable seizures, we should not ask instead whether "the challenged seizure could be found to have run afoul of" the fourteenth amendment's seemingly less applicable due process clause. See id. The Supreme Court adopted this view in Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), expressly holding that:
 
 
 14
 [A]ll claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.
 
 
 15
 Id. at ----, 109 S.Ct. at 1871 (footnote and emphasis omitted). We find this line of reasoning equally forceful in the context of claims arising under the eighth amendment. The Supreme Court has indicated that "the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners...." Albers, 475 U.S. at 327, 106 S.Ct. at 1088. Under the circumstances, the plaintiff's section 1983 claim in a case such as this must be for redress of eighth amendment, not fourteenth amendment substantive due process, rights. Cf. Graham, 490 U.S. at ----, 109 S.Ct. at 1871. Thus, we AFFIRM the district court's order granting a directed verdict for defendants Norris and Dutton, and REVERSE the judgment against defendants Ritz, House, and Jordan on the plaintiff's section 1983 substantive due process claim.
 
 C. Supervisory Liability
 
 16
 Although the jury returned a verdict against defendants Norris and Dutton on the plaintiff's supervisory liability claim, the district court subsequently granted a directed verdict in favor of both Norris and Dutton. The district court evaluated and rejected each of the plaintiff's theories for assigning liability to Norris and Dutton for the guards' underlying constitutional violations, including (1) failure to train the prison guards, (2) direct participation in formulating policies regarding unit doors and consumption of alcohol by inmates, and (3) ratification of the guards' actions. In considering the plaintiff's contention that the district court erred in granting a directed verdict, we must apply the same standard used by the district court to determine whether to grant the motion. See Lewis v. City of Irvine, Kentucky, 899 F.2d 451, 454 (6th Cir.1990). "Thus, we must ascertain 'whether the evidence is such, without weighing the credibility of the witnesses or considering the weight of the evidence, that there is substantial evidence from which the jury could find in favor of the party against whom the motion was made.' " Id. (quoting Hill v. McIntyre, 884 F.2d 271, 274 (6th Cir.1989)).
 
 1. Failure to Train
 
 17
 The Supreme Court formally recognized the failure to train theory as a basis for section 1983 liability in City of Canton, Ohio v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989), but limited its application to cases "where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come in contact."[10] Id. (footnote omitted). As the Court explained in Harris:[T]he focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct.
 
 
 18
 Id. at 390-91, 109 S.Ct. at 1205-06 (citations omitted). Here, the uncontroverted evidence establishes that all corrections officers receive three weeks (approximately 120 hours) of training at the Correctional Training Academy in Tullahoma, Tennessee,[11] followed by 40 hours each year of in-service training. This mandatory curriculum includes courses on communication skills and the use of force, but no specific training concerning the operation of unit doors or the use of mace. We agree with the district court that the omission of instruction with regard to the operation of unit doors and the use of mace did not render the training program "deliberately indifferent" to the rights of Fails and other inmates at the prison. As we have explained, whether the officers' training "was the best and most comprehensive available has no bearing on the plaintiff['s] failure to train claim." Lewis, 899 F.2d at 455. Here, as in Lewis, "reasonable jurors could only conclude that the [supervisors'] failure to train [the corrections officers] did not rise to the level of deliberate indifference." Id. The district court's order granting a directed verdict in favor of defendants Norris and Dutton on the plaintiff's failure to train claim, therefore, is AFFIRMED.
 
 2. Formulation of Policy
 
 19
 The plaintiff further contends that the district court should have allowed the supervisory liability verdict to stand based upon the participation of defendants Norris and Dutton in formulating flawed policies. Specifically, the plaintiff charges both defendants with installing the door to the unit that prevented Fails from reaching the safety of the prison yard. The unrefuted testimony of warden Dutton, however, established that prison policy included posting a guard at the door to intervene in cases of emergency. Here, defendant Ritz was guarding the door, yet failed to take the type of action anticipated by prison policy. Thus, the record is bereft of evidence to suggest that the policy devised by warden Dutton concerning the door caused or facilitated Eggleston's attack upon Fails. Similarly, the record contains no support for the plaintiff's assertion that defendants Norris and Dutton were responsible for an informal policy permitting prisoners to produce and consume the alcoholic beverage known as "julep." Norris testified that alcoholic beverages were explicitly forbidden, and Dutton explained the prison policy requiring discipline of inmates found to be intoxicated. The plaintiff merely established that Dutton, in attempting to ensure security within the prison, gave guards some discretion in dealing with intoxicated inmates. As the district court concluded, neither Norris nor Dutton could reasonably be found to have promulgated or tolerated an informal policy of allowing inmates access to julep. The entry of a directed verdict on the plaintiff's theory that Norris and Dutton instituted unconstitutional policies is AFFIRMED.
 
 3. Ratification
 
 20
 The plaintiff's final hypothesis in support of the jury verdict on supervisory liability focuses exclusively upon the conduct of defendants Norris and Dutton after Fails' death. That is, the plaintiff contends that the defendants failed to take any remedial or disciplinary actions following the stabbing, thereby ratifying the unconstitutional behavior and conditions leading to the event. As the district court recognized in considering the defendants' motion for a directed verdict, we have held that a failure to investigate may give rise to section 1983 supervisory liability. See Marchese v. Lucas, 758 F.2d 181, 182, 188 (6th Cir.1985), cert. denied, 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 685 (1987). The case before us, however, differs from Marchese in two crucial respects. First, in Marchese, "there was, in fact, no serious investigation conducted" by any supervisory officials. Id. at 188. Here, the prison's internal affairs division investigated the stabbing and prepared an incident report, which defendant Dutton reviewed and discussed with the associate warden before signing and submitting it to the district attorney and the disciplinary board. Second, we imposed the broad investigative responsibilities outlined in Marchese upon the sheriff in his official capacity: "[T]he Sheriff is sued here in his official capacity and in that capacity, he had a duty to both know and act." Id. In this case, defendants Norris and Dutton are only subject to liability in their individual capacities; the Supreme Court's recent decision in Will v. Michigan Dep't of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), insulates state employees acting in their official capacities from liability for money damages. See id. at ----, 109 S.Ct. at 2311-12. For these reasons, we agree with the district court that Marchese is both factually and legally inapposite. The entry of a directed verdict for defendants Norris and Dutton on the plaintiff's ratification theory of supervisory liability is AFFIRMED.
 
 III.
 
 21
 The jury found each of the five defendants liable to the plaintiff under a state law negligence theory. In moving for a directed verdict on the state claim, the defendants relied upon the immunity for state officers and employees prescribed in the Tennessee statute defining the jurisdiction of the Tennessee Claims Commission.[12] See Tenn.Code Ann. Sec. 9-8-307(h) (Supp.1989). According to section 9-8-307(h):
 
 
 22
 State officers and employees are absolutely immune from liability for acts or omissions within the scope of the officer's or employee's office or employment, except for willful, malicious, or criminal acts or omissions or for acts or omissions done for personal gain.
 
 
 23
 The district court analyzed this immunity provision and found it applicable "only to negligence claims against individual employees raised before the [Claims Commission]."[13] Thus, the district court denied the defendants' directed verdict motions. On appeal, the defendants reiterate their contention that section 9-8-307(h) shields them from liability for claims under Tennessee law in all court systems, not simply in proceedings before the Claims Commission.[14] Because this argument raises an issue of state law not yet addressed by the Tennessee Supreme Court, we must independently "ascertain from all available data what the state law is and apply it." Bailey v. V & O Press Co., 770 F.2d 601, 604 (6th Cir.1985) (identifying various "sources of data which may guide our inquiry" into state law).
 
 
 24
 Proceedings before the Claims Commission are administrative in nature, see, e.g., White ex rel. Swafford v. Gerbitz, 860 F.2d 661, 664 (6th Cir.1988), cert. denied, 489 U.S. 1028, 109 S.Ct. 1160, 103 L.Ed.2d 219 (1989), and the jurisdiction of the Claims Commission is carefully defined by statute. See Tenn.Code Ann. Sec. 9-8-307(a)(1). "Negligent care, custody or control of persons" is one of the enumerated claims within the jurisdiction of the Claims Commission under current Tennessee law. See Tenn.Code Ann. Sec. 9-8-307(a)(1)(E) (Supp.1989). Consequently, the plaintiff could have filed a claim against the State of Tennessee before the Claims Commission. Had the plaintiff done so, that claim against the state would have "operate[d] as a waiver of any cause of action, based on the same act or omission, which the claimant ha[d] against any state officer or employee[,]" Tenn.Code Ann. Sec. 9-8-307(b) (Supp.1989), thereby barring the plaintiff from seeking redress against the individual defendants in this case. See White ex rel. Swafford, 860 F.2d at 663-64. The plaintiff, however, chose to sue only individual state officials and employees. Such claims against individual state employees traditionally were viewed by Tennessee courts as beyond the jurisdiction of state administrative tribunals and, therefore, viable bases for pursuing recovery under state law. See, e.g., Hill v. Beeler, 199 Tenn. 325, 330, 286 S.W.2d 868, 872 (1956); Adkins v. McCartt, 723 S.W.2d 627, 630-31 (Tenn.App.1986) (applying pre-1985 statutory provisions). The defendants, however, contend that the 1985 amendment of section 9-8-307(h) extended absolute immunity to all state officials and employees. We agree.
 
 
 25
 When the Tennessee legislature first enacted section 9-8-307(h) in 1984, the statute simply provided that "[s]tate employees are absolutely immune from liability for wrongs falling within the parameters of this Chapter." 1984 Tenn.Pub.Acts, ch. 972 Sec. 8(h) (emphasis added). Under this original language, state employees clearly were immunized only for tortious conduct falling within the jurisdiction of the Claims Commission as defined by the Claims Commission Act, Tenn.Code Ann. Sec. 9-8-307(a)(1). In contrast, section 9-8-307(h) as amended grants absolute immunity "from liability for acts and omissions within the scope of the officer's or employee's office or employment[.]" Tenn.Code Ann. Sec. 9-8-307(h). The legislature's elimination of the original language restricting absolute immunity to actions "falling within the parameters" of the Claims Commission Act inexorably leads us to the conclusion that the Tennessee legislature's amendment of section 9-8-307(h) extended absolute immunity to all claims against state officers and employees. This interpretation, which is entirely consistent with the underlying purpose of the Claims Commission scheme to transfer exposure from state employees to the State of Tennessee itself, has been adopted in at least three Tennessee Circuit Court and two United States District Court decisions. See Ayers v. Chattanooga-Hamilton County Hosp. Auth., No. N-35218, slip op. at 1 (Hamilton County Cir.Ct. Jan. 11, 1989); Johnson v. Hayes, No. N-36080 (Hamilton County Cir.Ct. Oct. 12, 1988); Heathcoat v. Neal, No. 12697-3 T.D., slip op. at 1-2 (13th Dist.Tenn.Cir.Ct. April 1, 1987); Tuscher v. McDonald, No. 2-89-0014, slip op. at 1-2 (M.D.Tenn. Aug. 9, 1989) (Morton, J.); Chandler v. Palmer, No. CIV-3-87-500 (E.D.Tenn. Oct. 7, 1987) (Hull, J.).
 
 
 26
 Having determined that section 9-8-307(h) immunity bars claims against state officers and employees filed in federal and state court as well as with the Claims Commission, we must consider the exception to absolute immunity set forth in the statute. According to section 9-8-307(h), state officers and employees may not avail themselves of absolute immunity if their conduct was "willful, malicious, or [constituted] criminal acts or omissions or ... acts or omissions done for personal gain." Here, the jury's decision to award punitive damages against each of the five defendants suggests that, despite the immunity provided by section 9-8-307(h), the defendants' conduct may fall within the statutory exception, thus exposing the defendants to liability under state law. This is an issue more appropriately left for resolution in the first instance by the district court. Accordingly, we VACATE the judgment against all five defendants on the plaintiff's state law claim and REMAND that cause of action for consideration of whether the statutory exception to section 9-8-307(h) immunity provides a basis for imposing liability under state law upon the defendants.[15]
 
 IV.
 
 27
 The defendants' final assignment of error concerns the damages awarded to the plaintiff. The defendants do not contest the district court's imposition of joint and several liability, but challenge the amount of the compensatory award--$175,000--as excessive enough to require either remittitur or a new trial. We have explained, however, that "[w]here a jury grants a particular damage award and the district court refuses to disturb that finding, an appellate court should be certain indeed that the award is contrary to all reason before it orders a remittitur or a new trial." In re Lewis, 845 F.2d 624, 635 (6th Cir.1988). The testimony adduced at trial establishes that, in addition to losing his life, Fails endured pain and suffering before he died. In light of the compensatory nature of damages under section 1983, see, e.g., Memphis Community School Dist. v. Stachura, 477 U.S. 299, 306-07, 106 S.Ct. 2537, 2542-43, 91 L.Ed.2d 249 (1986), we cannot say that the award of $175,000 in this case is contrary to all reason. Accordingly, we AFFIRM the $175,000 compensatory damage award assessed against the remaining defendants, Ritz and Jordan, jointly and severally.[16]
 
 
 28
 The $2,500 and $2,000 punitive damage awards against defendants Ritz and Jordan respectively are neither unsupported nor excessive. The district court's instructions to the jury regarding punitive damages permitted such an award only upon a finding that each defendant's acts "were either maliciously, wantonly, or oppressively done." This instruction required the jury to weigh the plaintiff's demand for punitive damages under a standard at least as strict as the standard articulated by the Supreme Court in Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983) ("[A] jury may be permitted to assess punitive damages in an action under Sec. 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."). Furthermore, because the instructions informed the jury that "[p]unitive damages are not recoverable as a matter of right," the jury properly understood that the decision to grant such awards rested within its sound discretion. See Smith, 461 U.S. at 52, 103 S.Ct. at 1638. Insofar as the amounts of the punitive damage awards are concerned, we accept as eminently reasonable the jury's assessments of the appropriate amounts to punish and deter defendants Ritz and Jordan. See id. at 54, 103 S.Ct. at 1639 (explaining that punitive damages are awarded to punish and deter). Accordingly, we AFFIRM the punitive damage awards against defendants Ritz and Jordan, REVERSE the award against defendant House based upon the absence of liability on any federal claim, and AFFIRM the entry of a directed verdict in favor of defendants Norris and Dutton on the plaintiff's demand for punitive damages.
 
 
 
 *
 Honorable Richard A. Enslen, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 Earlier in the day, corrections officer House "approached Mr. Eggleston on one of the walks and could smell he had been drinking julep[.]" When House questioned Eggleston about the julep, Eggleston "started talking real loud and verbally abusive."
 
 
 [2]
 Two doors--one solid metal and the other metal grill--potentially impeded access to the prison yard from Unit IV, but only the metal grill door was closed when Fails attempted to run into the yard to elude Eggleston
 
 
 [3]
 Corrections officer House had previously given Ritz a general instruction not to open the door on his shift
 
 
 [4]
 The plaintiff also sued Eggleston for wrongful death in the nature of battery under Tennessee law. That claim, on which the district court directed a verdict as to liability in favor of the plaintiff, is not before us for review
 
 
 [5]
 The punitive damage awards against the five defendants were as follows: Norris--$15,000; Dutton--$15,000; Ritz--$2,500; House--$5,000; and Jordan--$2,000. The jury also assessed $10,000 in punitive damages against Eggleston
 
 
 [6]
 The district court's ruling, which was predicated upon the characterization of Norris' and Dutton's conduct as mere negligence, resulted in the elimination of the punitive damage awards against Norris and Dutton
 
 
 [7]
 Because we recognized such a cause of action long before the conduct underlying this suit occurred, see Stewart v. Love, 696 F.2d 43 (6th Cir.1982), the district court correctly rejected the defendants' assertion of qualified immunity as a defense to the plaintiff's section 1983 eighth amendment claim. Cf. Robinson v. Bibb, 840 F.2d 349, 351 (6th Cir.1988) ("[T]his court [the Sixth Circuit] can 'clearly establish' even a newly recognized constitutional right[.]"). In addition, since "[t]he question of whether qualified immunity attaches to an official's actions is a purely legal question for the trial judge to determine prior to trial[,]" Garvie v. Jackson, 845 F.2d 647, 649 (6th Cir.1988), we find that the district court properly refused to submit the qualified immunity issue to the jury
 
 
 [8]
 At various points in their brief, defendants Ritz and Jordan suggest that their appeal is from the denial of their motions for a directed verdict under Federal Rule of Civil Procedure 50(a), for judgment notwithstanding the verdict under Rule 50(b), and for a new trial under Rule 59. Applying any of the various deferential standards of review associated with these rules, we find ample support for the district court's denial of each motion
 
 
 [9]
 In affirming the judgment against Ritz and Jordan, we summarily reject the defendants' assertion that the district court erred in admitting several photographs of Fails' body. Although the defendants characterize the photographs as substantially more prejudicial than probative, see Fed.R.Evid. 403, we cannot say that the district court abused its discretion in admitting the photographs as evidence of conscious pain and suffering
 
 
 [10]
 The Supreme Court commented that "[t]he 'deliberate indifference' standard we adopt for Sec. 1983 'failure to train' claims does not turn upon the degree of fault (if any) that a plaintiff must show to make out an underlying claim of a constitutional violation." Harris, 489 U.S. at 388 n. 8, 109 S.Ct. at 1204 n. 8. Thus, the "deliberate indifference" standard governs all failure to train claims regardless of whether the underlying constitutional violation is a fourth amendment transgression judged by an "objective reasonableness" test, an eighth amendment transgression subject to evaluation under a "deliberate indifference" standard, or some other constitutional violation reviewed under a different standard
 
 
 [11]
 The training academy has an annual budget of $3,000,000 and a staff of 12 instructors and more than 60 other employees
 
 
 [12]
 Although the plaintiff contends that the state law immunity argument is barred because it was raised in an untimely fashion, the defendants provide two persuasive responses to this contention. First, the defendants actually raised the immunity issue well before trial, prompting the district court to address the merits of the issue instead of simply rejecting the immunity defense as untimely. Second, several of the state circuit court decisions interpreting Tenn.Code Ann. Sec. 9-8-307(h) have characterized the immunity provision as jurisdictional, and therefore subject to consideration at any juncture in the proceedings
 
 
 [13]
 The district court referred to the administrative body as the Board of Claims, which is not the same as the Claims Commission. Compare Tenn.Code Ann. Sec. 9-8-101 (establishing Board of Claims) with id. Sec. 9-8-301 (creating "an administrative tribunal ... known as the Tennessee claims commission"). The Board of Claims has "the authority, but is not required, to investigate and hear claims and make awards when appropriate in cases based on acts and omissions of state officers or employees where a claim does not fall within the jurisdiction of the claims commission under Sec. 9-8-307(a)." Tenn.Code Ann. Sec. 9-8-108(a) (Supp.1989). The Board of Claims is forbidden by statute to exercise jurisdiction over "any claim" within the jurisdiction of the Claims Commission, which is defined by section 9-8-307(a). See Tenn.Code Ann. Sec. 9-8-108(a) (Supp.1989)
 
 
 [14]
 The defendants do not argue that the Tennessee statute immunizes them from liability for claims under federal law. Indeed, the Supreme Court's decision in Martinez v. California, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), illustrates that state law cannot provide immunity with regard to section 1983 claims. See id. at 283-84 & n. 8, 100 S.Ct. at 558-59 & n. 8; see also Howlett ex rel. Howlett v. Rose, --- U.S. ----, 110 S.Ct. 2430, 2443-44, 110 L.Ed.2d 332 (1990)
 
 
 [15]
 We recognize that the allegation and existence of diversity jurisdiction prevents the district court from dismissing the state law claim without prejudice. See 28 U.S.C. Sec. 1332(a)
 
 
 [16]
 Since the plaintiff has not yet established that defendants Norris, Dutton, and House are liable on any federal or state law claim, they obviously are not responsible for the compensatory damage award. Eggleston, however, remains liable based upon the plaintiff's successful battery claim against him