**Sherman TAYLOR, Plaintiff–Appellant,**

v.

**Stephen LITTLE, Darrell Curtis, and Ohio County, Kentucky, Defendants–Appellees.**

No. 01–5651.

United States Court of Appeals, Sixth Circuit.

Jan. 6, 2003.

Before KEITH, KRUPANSKY, and CLAY, Circuit Judges.

PER CURIAM.

Plaintiff Sherman Taylor appeals from an order granting Defendants' motion for summary judgment. Taylor brought this action against Defendants Stephen Little, Darrell Curtis, and Ohio County, Kentucky, pursuant to 42 U.S.C. § 1983, alleging violations of the Eighth Amendment's prohibition against cruel and unusual punishment. Taylor also sued the defendants for negligence, asserting various theories of liability under Kentucky tort law. For the reasons set forth below, we AFFIRM the judgment of the district court.

## I.

On December 5, 1998, Sherman Taylor was viciously beaten by Charles Allen. At the time, both Taylor and Allen were detained at the Ohio County (Kentucky) Detention Center. The two men were housed in adjoining cells. Taylor was incarcerated as a result of alcohol-related offenses, while Allen was awaiting trial on a charge of capital murder.

The assault occurred after Deputy Jailer Stephen Little opened the doors to both cells for a visitation period. Allen immediately entered Taylor's cell and attacked him. According to witnesses, Allen beat Taylor about the head and chest with his fists and feet and rammed his head into the corner of a steel bench. During the attack, Allen bit off part of Taylor's ear. Taylor was rendered unconscious during

the attack and has no memory of the incident.

The night before the assault, Taylor and Allen had a verbal disagreement, during which Allen told Taylor that "when the doors open tomorrow I'm coming in there and whipping your ass." There is no evidence that any jail employee was aware of this threat.

Approximately two weeks before Allen's attack on Taylor, Allen had attacked another inmate, Charles Jones. Jones was to testify against Allen in his upcoming murder trial.

## II.

In granting the defendants' motion for summary judgment, the district court found that there was no evidence in the record from which a reasonable juror could find that the defendants either acted with deliberate indifference to Taylor's safety or could have reasonably anticipated the assault. We review a district court's grant of summary judgment *de novo. Holloway v. Brush,* 220 F.3d 767, 772 (6th Cir.2000).

### A. Plaintiff's Section 1983 Claim

Section 1983 provides a remedy for deprivations of rights secured by the Constitution, including violations of the Eighth Amendment's prohibition on cruel and unusual punishment. *See Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 924, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). In the prison context, the Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of the inmates. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The Amendment forbids prison officials from acting with "deliberate indifference" to the serious needs of prisoners. *Walker v. Norris,* 917 F.2d

1449, 1453 (6th Cir.1990). "[D]eliberate indifference of a constitutional magnitude may occur when prison guards fail to protect one inmate from an attack by another." *Walker,* 917 F.2d at 1453.

The Supreme Court has held that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety". *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970. To prevail on a claim of deliberate indifference, a plaintiff must demonstrate that the defendant: (1) had actual knowledge of facts from which the inference could be drawn that a substantial risk of serious harm existed; and (2) actually drew the inference. *Id.* at 837, 114 S.Ct. 1970.

Taylor bases his Eighth Amendment claim on the failure of Ohio County and Curtis[1] to segregate violent prisoners from nonviolent ones; the failure of Ohio County and Curtis to prevent overcrowding at the prison or provide adequate staffing; and Little's failure to intervene in the assault. The district court rejected each of these bases for Taylor's claim. First, the district court found that the prison officials were not aware that Allen posed a risk to Taylor's safety. Second, the district court found that there was no proof that the overcrowding of the facility or the lack of adequate security proximately caused his injuries. Third, the district court concluded that Deputy Little reacted reasonably to the incident by ordering Allen to stop, attempting to obtain a stun gun, and requesting that another deputy call 9–1–1.

We agree with the district court. With regard to Taylor's first claim, there was no evidence that the defendants knew of Al-

---

1. Darrell Curtis was Ohio County Jailer at the time of the assault.

len's threat on December 4. The only indication of Allen's propensity for violence toward fellow prisoners was his attack on Jones, who was scheduled to testify against Allen at his murder trial. This lone incident was insufficient to put prison officials on notice that Allen might attack Taylor. One can easily understand why Allen might want to hurt or intimidate a witness scheduled to testify against him. In contrast, prison officials had no reason to suspect that Allen might harm someone like Taylor, to whom Allen had no apparent connection. Taylor also cites evidence that Allen had been hostile to the staff of another correctional facility, had complained about his nerves and emotional state, and had been incarcerated for violent felonies before. At most, this evidence merely suggests that Allen, not unlike many inmates in our prison system, is prone to antisocial and sometimes violent behavior. It does not suggest that prison officials should have been aware that he might randomly attack a fellow inmate.

With respect to Taylor's second claim, he has not explained how the overcrowded facility[2] and lack of adequate security caused or even contributed to his injuries. Nor does Taylor cite any authority for his apparent contention that the Constitution requires security cameras in prison cells and forbids prison officials from opening two cell doors at the same time.

Finally, it does not appear that Deputy Little failed to intervene or otherwise act to prevent an assault. Rather, his response to the situation was reasonable under the circumstances. The entire incident lasted less than one minute. During that time, Little ordered Allen to stop, attempted to obtain a stun gun, and told another deputy to call 911. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844, 114 S.Ct. 1970.

**B. Plaintiff's State Law Claim**

The district court noted that under Kentucky law, prison officials cannot be held liable for inmate injuries unless, in the exercise of ordinary care, the injury could have been reasonably anticipated. *Ratliff v. Stanly*, 224 Ky. 819, 7 S.W.2d 230, 232 (1928). As discussed above, the district court found no evidence to support a finding that the defendants could have reasonably anticipated Allen's attack on Taylor.

Taylor relies on *Glover v. Hazelwood*, 387 S.W.2d 600 (Ky.1964), in which the Kentucky Supreme Court held that a jury issue was created in a case alleging jailer liability for inmate-on-inmate violence, where there was evidence that the same inmate had attacked other prisoners in the past. However, *Glover* is factually distinguishable from the present case. The attacker in *Glover* had apparently assaulted fellow inmates on numerous occasions in the nearly twelve months leading up to the attack on Glover. In contrast, Allen had attacked only one other prisoner prior to his assault on Taylor, and that previous attack was readily explained by the victim's impending testimony in Allen's murder trial.

### III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

**2.** The prison was five inmates over its capacity of 50.