NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0427n.06
Filed: May 23, 2005

No. 04-3971

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| BOBBY LOY and BRENDA LOY, | ) | |
| | ) | |
| **Plaintiffs-Appellees,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| TIMOTHY SEXTON, | ) | |
| | ) | **O P I N I O N** |
| **Defendant-Appellant.** | ) | |
| | ) | |

**Before:   MOORE and NELSON, Circuit Judges and RESTANI,\* Judge.**

**RESTANI, J.**  Defendant-Appellant, Sheriff Timothy Sexton, appeals the district court's

denial of his motion for summary judgment in which he sought qualified immunity in response to

allegations of violations of constitutional rights by Plaintiffs-Appellees, Bobby and Brenda Loy.

Because the Loys have failed to show that Sexton deprived them of a constitutionally protected

right, we **REVERSE** the district court's judgment and **REMAND** for further proceedings consistent

with this opinion.

## I.  BACKGROUND

Timothy Sexton has been the sheriff of Lawrence County, Ohio since November 2000.  He

supervises Deputy Jerry Elliott.  Bobby and Brenda Loy live in Lawrence County.

---

\*The Honorable Jane A. Restani, Chief Judge of the United States Court of International
Trade, sitting by designation.

On December 6, 2001, Deputy Elliott was called to the Loy's home to assist two Children's Services workers who were planning to serve the Loys with court papers. Sheriff Sexton did not accompany him. Although Elliott did not have a warrant and did not obtain consent to enter the Loy residence, he and the Children's Services workers did so anyway. When they entered his home, Mr. Loy became upset and protested loudly. Elliott warned him to cease and desist. Mr. Loy then made an aggressive move and Elliott grabbed his arm to place him under arrest. When Mr. Loy attempted to free himself, Elliott took him to the floor and handcuffed him. Mr. Loy sustained carpet burns on his forehead and later sought medical attention for increasing pain in his shoulder, elbow, and arm.

In accordance with standard procedures, Elliott filed an incident report describing the arrest. Although Sexton may have reviewed Elliott's report, he does not recall doing so, and he never conducted an investigation into the incident.[1]

The Loys sued Sexton, Elliott, and Lawrence County under 42 U.S.C. § 1983.[2] Sexton and Elliott moved for summary judgment on the basis of qualified immunity. The district court denied the motions, holding that "[a] reasonable officer would know he could not force his way into a citizen's home and then manhandle the resident protesting the incursion[, and a] reasonable officer

[1] Sexton testified that he reviews 98% of the incident reports filed by his officers and the remaining 2% are either reviewed by another supervisor or sent directly to the court. *See* Sexton Dep. at 58, JA 348. If a report indicates that an officer used excessive force or acted beyond the scope of his duties, Sexton stated that he conducts an investigation into the incident. *Id.* at 65–67, JA 350.

[2] The Loys also brought a claim against Elliott for assault and battery, which they claimed occurred within the scope of his employment with Lawrence County. *See* Compl. at 6–7, JA 14–15.

would not ratify such action." Order at 17, JA 33. Sexton now appeals to this court.[3]

## II. ANALYSIS

The doctrine of qualified immunity protects government officials who perform discretionary functions from civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396, 410 (1982). In *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272, 281 (2001), the Court set forth a two-prong test that must be applied to a qualified immunity analysis. First, the court must consider a threshold question: Whether the facts alleged show that the official's conduct violated a constitutional right. *Id.* If there is no showing of a constitutional violation, then the qualified immunity inquiry ends. *Id.* If, however, the facts viewed in the light most favorable to the plaintiff do establish such a violation, the court must then determine whether the right was so clearly established that a reasonable official would have known that his conduct would violate that right. *Id.*

Thus, we must first consider whether Sexton's conduct violated the Loys' constitutional rights. Sexton argues that because he was not directly involved in the alleged unconstitutional actions at the Loy residence, he cannot be held liable under § 1983. The Loys respond that even though Sexton did not enter their residence or directly assault Mr. Loy, he is nonetheless liable as a supervisor.

Liability under § 1983 cannot be based on the doctrine of *respondeat superior*. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). In order for supervisory liability to attach, a plaintiff

---

[3] We have jurisdiction over this matter pursuant to 28 U.S.C. § 1291 and *Mitchell v. Forsyth*, 472 U.S. 511, 524, 105 S. Ct. 2806, 2814, 86 L. Ed. 2d 411, 424 (1985). We review questions of qualified immunity *de novo*. *Toms v. Taft*, 338 F.3d 519, 524 (6th Cir. 2003).

must prove that the official "did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on." *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (citations omitted). A plaintiff must show that the official "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (citations and quotations omitted). At the very least, "a plaintiff must show that the official . . . implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* (citations and quotations omitted). In other words, "liability under § 1983 must be based on active unconstitutional behavior." *Id.* In this case, the Loys assert that Sexton exhibited active unconstitutional behavior by (1) ratifying Elliott's conduct, (2) inadequately training his deputies, and (3) establishing flawed policies. We disagree.

First, the Loys contend that Sexton ratified Elliott's unconstitutional behavior by failing to investigate or to take any remedial measures following Mr. Loy's arrest.[4] Although the failure to investigate may give rise to § 1983 supervisory liability, *Walker v. Norris*, 917 F.2d 1449, 1457 (6th Cir. 1990) *Marchese v. Lucas*, 758 F.2d 181, 188 (6th Cir. 1985), no *sua sponte* investigation by Sexton was warranted here. The reports describing the arrest, including statements by Deputy Elliott and the two Children's Services workers, do not indicate that Elliott used excessive force or unlawfully entered the Loy residence.[5] In the absence of a "strong" indication of unconstitutional

---

[4] The Loys also suggest that Sexton may be liable under Ohio law for ratifying Elliott's misconduct. The Ohio Code holds a sheriff responsible if he "ratifies the neglect of duty or misconduct in office of [his] deputy." Ohio Rev. Code Ann. § 311.05 (2005). As discussed below, however, there is no evidence that Sexton was aware of any neglect or misconduct.

[5] Deputy Elliott's report states, in relevant part, "Mr. Loy and I were face to face. I advised Mr. Loy to cease and de[sist] and to let workers do their job. I told Mr. Loy to back off. Mr. Loy told me to back off. I did take one step back. At this time Mr. Loy continued and made a movement with his left arm. I felt Mr. Loy was making an aggressive move toward this officer

4

conduct, Sexton's failure to conduct an investigation was reasonable and he cannot be liable as a supervisor under § 1983.[6] *See Doe v. City of Roseville*, 296 F.3d 431, 439 (6th Cir. 2002) (holding that supervisors were not liable because they possessed no information indicating "a strong likelihood" of unconstitutional conduct by their subordinate).

Moreover, unlike *Marchese*, 758 F.2d at 188, where we held that a sheriff, sued in his official capacity, had "a duty to both know and act," Sexton is being sued here in his individual capacity. *See Walker*, 917 F.2d at 1457 (finding *Marchese* legally inapposite because defendants were only subject to liability in their individual capacities). Indeed, the Loys could not sue Sexton in his official capacity for money damages. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312, 105 L. Ed. 2d 45, 58 (1989) (holding that state employees acting in their official capacities are insulated from liability for money damages). Accordingly, the Loys' claim against Sexton based on ratification fails.

Second, the Loys argue that Sexton is liable for failing to adequately train his deputies. In

---

and Children Service[s] Workers. I grabbed Mr. Loy's left arm and advised him he was under arrest. I placed his arm behind his back. Mr. Loy made an attempt to release himself from my grip. I then place[d] Mr. Loy down on the carpeted living room floor. I cuffed Mr. Loy and removed him to Sheriff's car." Incident Rep. by Dep. Elliott (Dec. 6, 2001) at JA 382. The reports filed by the Children's Service[s] Workers verify Elliott's report. *See* Incident Rep. by David E. Carey (Dec. 6, 2001) at JA 385 (similarly describing Mr. Loy's arrest and adding that "I believe Mr. Elliott did what he felt was appropriate at the time"); Incident Rep. by Samantha Riley (Dec. 6, 2001) at JA 386 (similarly describing arrest of Mr. Loy).

[6] The Loys insist that *every* reported use of force by a deputy should be investigated. This argument, however, is contrary to constitutional principles. *See Graham v. Connor*, 490 U.S. 386, 396–97, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443, 455–56 (1989) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation.") (internal citations and quotations omitted).

*Walker*, we considered whether prison officials, sued in their individual capacities, were liable under § 1983 for failure to train their subordinates. 917 F.2d at 1455–56. In that case, we analyzed the adequacy of the training program in relation to the tasks the particular officers were required to perform and concluded that the omission of instruction on some matters did not render the program "deliberately indifferent" to the rights of the prison inmates. *Id.* at 1456. Accordingly, we held that the supervisors were not liable under § 1983 for a failure to train. *Id.* In this case, the Loys present no evidence regarding the inadequacy of the Lawrence County Sheriff Office's training program. Although they criticize Sexton for not requiring "use of force reports," the record indicates that Sexton does require his deputies to describe any uses of force in "incident reports." Sexton Dep. at 48–50, JA 345–346. In fact, Deputy Elliott's "incident report" detailed his "use of force" against Mr. Loy. *See* Incident Rep. at JA 382. Sexton's apparent failure to train his deputies to correctly label their reports hardly amounts to a deliberate indifference to the rights of those with whom they come in contact. Thus, the Loys' claim based on Sexton's failure to train must also fail.

Third, the Loys assert that Sexton is liable because he established flawed policies. Specifically, they argue that because Sexton only investigated one instance of the use of force over a three year period, "[t]he message [he] was sending to his . . . deputies was that use of force would not be investigated generally, and that he would protect them if they used unbridled force." Resp. at 26. A supervisory official can be liable under § 1983 for formulating or tolerating unconstitutional policies. *See, e.g., Walker*, 917 F.2d at 1456 (considering whether prison officers, in their individual capacities, were responsible for promulgating an informal policy of permitting prisoners to produce and consume alcoholic beverages). There is no showing, however, that Sexton formulated such a policy here. Sexton testified that established guidelines require him to investigate

6

the excessive use of force by his deputies and that he does so when warranted.  <u>See</u> Sexton Dep. at

41–56, JA 344–47.  Because the record contains no support for the Loys' assertion that Sexton was

responsible for an informal custom or policy condoning the excessive use of force, this claim also

fails.

In sum, the facts viewed in the light most favorable to the plaintiffs do not show that Sexton

actively encouraged, participated in, or authorized, approved or knowingly acquiesced in the alleged

harm suffered by the Loys.  Accordingly, we see no violation by Sexton of the Loys' constitutional

rights and need not address the second prong of the qualified immunity analysis.

### III.  CONCLUSION

For the reasons stated above, we **REVERSE** the district court's judgment and **REMAND**

for further proceedings in accordance with this opinion.