RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0199P (6th Cir.)
File Name: 01a0199p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JANE DOE,
      *Plaintiff-Appellee,*

    *v.*

GAYLE BOWLES; RICHARD
KEMP; RONALD STRATTON,
      *Defendants-Appellants.*

No. 00-3159

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 98-00476—Sandra S. Beckwith, District Judge.

Argued: May 2, 2001

Decided and Filed: June 19, 2001

Before: KENNEDY and DAUGHTREY, Circuit Judges;
McKEAGUE, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Todd R. Marti, OFFICE OF THE ATTORNEY
GENERAL, CORRECTIONS LITIGATION SECTION,

---

[*] The Honorable David W. McKeague, United States District Judge
for the Western District of Michigan, sitting by designation.

Columbus, Ohio, for Appellants.    Jennifer L. Branch, LAUFMAN & GERHARDSTEIN, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Todd R. Marti, OFFICE OF THE ATTORNEY GENERAL, CORRECTIONS LITIGATION SECTION, Columbus, Ohio, for Appellants.   Jennifer L. Branch, Alphonse A. Gerhardstein, LAUFMAN & GERHARDSTEIN, Cincinnati, Ohio, for Appellee.

    KENNEDY, J., delivered the opinion of the court, in which DAUGHTREY, J., joined.  McKEAGUE, D. J. (pp. 11-13), delivered a separate concurring opinion.

―――――――――――

## OPINION

―――――――――――

    KENNEDY, Circuit Judge.  Plaintiff Jane Doe,[1] an inmate at the Warren Correctional Institution, filed suit under 42 U.S.C. § 1983 against prison corrections officers alleging that the defendant officers failed to protect her from a physical attack by another inmate, in violation of her Eighth Amendment rights.   The district court denied qualified immunity to defendants Bowles, Kemp and Stratton. Defendants now appeal that denial.  For the reasons stated below, we reverse in part and dismiss the claims as to the remaining defendants for lack of jurisdiction.

## I.

    Plaintiff Jane Doe was an inmate in the protective custody (PC) unit of the Warren Correctional Institution (WCI) in Ohio.  Plaintiff had been diagnosed with a gender identity disorder and had feminine characteristics.  Plaintiff had the appearance of a woman and dressed as a woman.  Plaintiff was biologically male, however, and thus was placed in an

―――――――――――――――――――

    [1]Jane Doe is a pseudonym.  The plaintiff has the appearance of a woman and a female name but is biologically male.  Because plaintiff has a female pseudonym, we will refer to plaintiff here as "she."

all-male prison. Plaintiff was placed in the PC unit in order to protect her from predation by other inmates.

Hiawatha Frezzell was the inmate who attacked plaintiff. Frezzell was housed in the PC unit to protect him from other inmates against whom he testified regarding their involvement in the 1993 Lucasville riot. Frezzell also had a history of attacking other inmates, and defendant Richard Kemp, the unit manager of the PC unit, had previously concluded that Frezzell was a predatory inmate. Plaintiff was already housed in the PC unit when Frezzell was assigned there.

On July 11, 1996, Frezzell assaulted plaintiff by punching plaintiff in the back of the head as plaintiff walked by Frezzell's cell. The next morning, July 12, plaintiff reported the incident to defendant Kemp and Tom Schweitzer, a case manager in the PC unit. Plaintiff spoke with Kemp and Schweitzer again that day regarding the situation. Plaintiff alleges that she explicitly detailed the physical nature of the attack including the fact that Frezzell hit her on the back of the head and threatened to kill her. (J.A. 747.) Defendant Kemp states, however, that he did not understand the incident to have included any physical violence and that plaintiff offered only vague allegations that Frezzell was standing in his doorway harassing plaintiff. (J.A. 986-88.) Defendant Kemp and Schweitzer each spoke with Frezzell, warning him to stay away from plaintiff and told other corrections officers that Frezzell was prohibited from being near plaintiff. (J.A. 1007.) Kemp informed staff members arriving for a new shift of the conflict and the need to monitor Frezzell. At approximately 4 p.m., as defendant Kemp's shift was ending, Kemp reported the situation to defendant Ronald Stratton, the captain who would supervise all operations at WCI during the next shift. There is some factual question as to whether Kemp specified the names of the inmates involved when discussing the incident with Stratton. (J.A. 574, 1013.) Defendant Stratton asked defendant Kemp whether the inmates should be formally segregated but Kemp answered that segregation was not necessary. (J.A. 575.)

At approximately 4:30 p.m. on July 12, Frezzell entered plaintiff's cell while the other PC unit inmates were at dinner. Frezzell assaulted plaintiff and threatened to kill her. Defendant Gayle Bowles, the line corrections officer on duty at the time, caught Frezzell and wrote a conduct report charging Frezzell with disobeying the order to stay away from plaintiff. Bowles, who had begun her afternoon shift by conferring with other officers about the situation, locked Frezzell in his cell and initiated proceedings to have Frezzell placed in cell isolation. Defendant Stratton was ultimately responsible for determining where to put an inmate in need of discipline. The three options were: (1) in the segregation unit, (2) in the PC unit's segregation cells, or (3) in the inmate's own cell on cell isolation. Defendant Stratton approved cell isolation for Frezzell.

At approximately 7 p.m. that evening, plaintiff went to the medical clinic to be examined because of the assault. Defendant Bowles permitted Frezzell to leave his cell for a shower while plaintiff was gone. Plaintiff returned from the clinic while Frezzell was still in the shower, but the two did not meet. There is some debate as to whether defendant Bowles warned plaintiff that Frezzell was out of his cell and as to what plaintiff's response was to any warning. Frezzell returned to his cell without incident. Later, Frezzell asked another corrections officer if he could leave his cell to get some ice. The officer said yes and Frezzell retrieved the ice and returned to his cell without incident. A few minutes later, Frezzell asked defendant Bowles if he could leave his cell to get a mop. Bowles said yes and Frezzell left to retrieve the mop. According to the written cell isolation policy, obtaining a mop to clean a cell is not one of the permissible reasons for an inmate on cell isolation to leave his cell. (J.A. 166.) On his way back to his cell, Frezzell passed plaintiff's cell, opened the door to plaintiff's cell which was not locked and entered plaintiff's cell. Frezzell began assaulting plaintiff with the mop handle. Defendant Bowles had been monitoring Frezzell and rushed to the cell, but she was unable to stop the assault alone. She called for assistance and Frezzell was ultimately subdued, but not before plaintiff suffered injury.

this meant an inmate on cell isolation should be escorted by an officer whenever he leaves his cell. (J.A. 527.)

Bowles testified that she gave Frezzell permission to get a mop to clean his cell. (J.A. 335.) It is undisputed that she did not escort him to or from his cell. (J.A. 336.) Although Bowles testified that she had visual contact with Frezzell at all times (*id.*), her failure to escort him may have violated prison policy, and, arguably, exhibited a deliberate indifference to plaintiff's safety. Accordingly, I agree with the majority that we cannot hold, as a matter of law, that defendant Bowles is entitled to qualified immunity.

Lastly, I concur for the reasons provided in the majority opinion that the district court erred in not granting qualified immunity to defendant Stratton.

for "Cell Restriction"[1] (synonymous with "Cell Isolation" J.A. 524) specifically forbade its use in this type of situation: "This type of restriction [cell isolation] will not be used in instances where the inmate has acted in a violent or assaultive manner." (J.A. 1038.)

During his deposition, then-Deputy Warden Mack[2] testified that a violent or assaultive inmate should not be placed in cell isolation, but rather segregation. (J.A. 525.) Plaintiff's counsel then specifically asked Mack about the impact, if any, on safety:

Q    And it's not safe for the other inmates and other staff to have an [assaultive] inmate placed just in cell isolation?

A    That would be my assumption, yes.

(J.A. 526.) While both Kemp and then-Warden Brigano testified in their depositions that cell isolation may have been the appropriate response, (J.A. 1009; 864-67), a genuine issue of material fact exists which precludes review of Kemp's qualified immunity claim.

The prison policy also requires that an inmate on cell isolation "will be escorted to his pod and locked in his cell until heard by the unit hearing officer. . . . Each inmate placed on cell restriction *will not* leave the cell for any reason other than" various listed activities. (J.A. 1039) (emphasis in original.) Interpreting this provision, Mack explained that

---

[1] Then-Deputy Warden Mack could not recall during his deposition whether the policy statement included in the Joint Appendix was in effect at the time of the attack. (J.A. 523-27.) However, then-Warden Brigano, whose signature is affixed at the end of the policy statement, testified that the policy statement appeared to be the one in effect at that time. (J.A. 849.)

[2] At the time of the attack, Mack was Deputy Warden of Operations at the Warren prison. He was promoted to Warden in September 1997. (J.A. 495.)

After this final assault, Frezzell was removed from the PC unit and taken to the segregation unit.

Plaintiff brought a § 1983 claim against Anthony Brigano, the warden of the prison, Richard Kemp, the manager of the PC unit, Ronald Stratton, the shift supervisor on duty when the assault occurred, and Gayle Bowles, the correction officer on duty in plaintiff's unit when the assault occurred. Defendants moved for summary judgment, arguing that they were entitled to qualified immunity. The district court ultimately entered judgment in favor of defendant Brigano and did not reach the question of qualified immunity as to him. The district court denied qualified immunity to defendants Kemp, Stratton and Bowles, stating that it could not conclude as a matter of law that the defendants were entitled to qualified immunity. Defendants-appellants Kemp, Stratton and Bowles now appeal, alleging that the district court erred in not granting them qualified immunity. For the reasons stated below, we grant qualified immunity to defendant Stratton, but we conclude that this court does not have jurisdiction to review the district court's denial of qualified immunity to defendants Kemp and Bowles.

## II.

Defendants argue that the district court erred in denying them qualified immunity from plaintiff's claims. Qualified immunity is an affirmative defense to a § 1983 claim against a public official. The Sixth Circuit has explained that in order for a court to deny qualified immunity to a § 1983 defendant, the plaintiff "must establish that [defendant's] conduct violated a federal right so clearly established that any official in his position would have understood that he was under an affirmative duty to refrain from such conduct." *McCloud v. Testa*, 97 F.3d 1536, 1541 (6th Cir. 1996) (citing *Washington v. Newsom*, 977 F.2d 991, 995 (6th Cir. 1992)). Defendants here argue that they are entitled to qualified immunity on two independent grounds. First, defendants argue that plaintiff cannot sufficiently demonstrate the alleged Eight Amendment violation because defendants were not "deliberately

indifferent" under the standard outlined in *Farmer v. Brennan*, 511 U.S. 825 (1994). Defendants argue alternatively that they did not violate "clearly established law" regarding the danger of inmate-on-inmate prison violence.

Plaintiff-appellee argues that this court does not have jurisdiction to consider this appeal because the parties have not stipulated to all of the facts. Plaintiff cites *Johnson v. Jones*, 515 U.S. 304 (1995), for the proposition that defendants' failure to concede the facts most favorable to plaintiff divests this court of jurisdiction. Although plaintiff is correct that this court does not have jurisdiction to hear an interlocutory appeal of the issue of qualified immunity if the issue involves a disputed question of fact, it is only the material facts which must be undisputed. In *Jones*, the Court explained that:

> We now consider the appealability of a portion of a district court's summary judgment order that, though entered in a "qualified immunity" case, determines only a question of "evidence sufficiency," i.e., which facts a party may, or may not, be able to prove at trial. This kind of order, we conclude, is not appealable.

*Id*. at 313. The Sixth Circuit has explained, however, that interlocutory appeal is appropriate if, "despite the fact that the district court thought there were disputed issues of [fact], [the court concludes that] . . . , regardless of the factual dispute, the plaintiffs [do] not have a valid claim." *McCloud*, 97 F.3d at 1545. This court has held that "regardless of the district court's reasons for denying qualified immunity, we may exercise jurisdiction over [defendant's] appeal to the extent that it raises questions of law." *Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir. 1996).

Provided that there are no disputed issues of material fact precluding jurisdiction, qualified immunity must be granted by this court if, as a matter of law, defendants' conduct did not violate a clearly established constitutional right. The right of an inmate to be protected from an attack by a fellow inmate was well established at the time the events in question took

---

**CONCURRENCE**

---

McKEAGUE, District Judge, concurring. I agree with the majority that genuine issues of material fact exist which preclude review of the qualified immunity claims of defendants Kemp and Bowles. *Johnson v. Jones*, 515 U.S. 304 (1995). I write separately only to highlight certain matters regarding the sufficiency of the defendants' responses prior to the second July 12, 1996, attack against plaintiff.

As explained in the majority opinion, defendants admit for purposes of this interlocutory appeal that they had knowledge of the risks to plaintiff posed by inmate Frezzell. They argue instead that the undisputed actions they took in response show, as a matter of law, that they did not act with deliberate indifference to plaintiff's safety in violation of the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825 (1994).

In his Incident Report dated July 13, 1996, Kemp noted that before he left the prison on July 12th (prior to the two attacks on plaintiff that day), he met

> with C.O. Branham, and C.O. Boles [sic] and relayed to them my concerns about this situation, and told both that if they saw Frizzell [sic] attempting to get even near [plaintiff] that they should contact a shift supervisor immediantly [sic], and have Frizzell [sic] placed on Cell Isolation which would prevent any further problems until I returned on the 13th.

(J.A. 156.) At first blush, this instruction appears to be a reasonable, intermediate response to the situation. However, the prison policy outlining the requirements and procedures

regarding Bowles' reaction to Frezzell's final assault on plaintiff in plaintiff's cell. Defendants argue that Bowles interjected herself between Frezzell and plaintiff and used force against Frezzell, while plaintiff argues that the record does not support this description and that, in fact, Bowles was physically incapable of controlling Frezzell and backed away from the fight. These differences are factual disputes. A jury may find that Bowles was simply negligent in permitting Frezzell to walk by plaintiff's cell to retrieve the mop, or a jury may find that, given all of the facts as determined at trial, Bowles' conduct was not a reasonable response to the admittedly known risk to plaintiff. Because Bowles' claim of qualified immunity depends on the resolution of factual issues, we conclude that we do not have jurisdiction to review the claim at this time.

## III.

For the reasons stated above, we reverse the district court's denial of qualified immunity as to defendant Stratton. We further find that we do not have jurisdiction to review the claims of defendants Kemp and Bowles. Those claims are, therefore, dismissed.

place. Well before the time of these events, this court stated in *Walker v. Norris*, 917 F.2d 1449 (6th Cir. 1990), that:

> The eighth amendment, which prohibits infliction of "cruel and unusual punishment," encompasses the proscription of "deliberate indifference" to the serious needs of prisoners. . . . On several occasions, we have held that "deliberate indifference" of constitutional magnitude may occur when prison guards fail to protect one inmate from an attack by another.

*Id.* at 1453. Thus, where there are no disputed material facts, the relevant question is whether plaintiff has made a showing of deliberate indifference on the part of prison officers, thereby constituting an Eighth Amendment violation. In *Farmer v. Brennan*, the Court outlined the test for deliberate indifference in a prison violence context, explaining that:

> Under the test we adopt today, and Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm.
>
> . . .
>
> [But] prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.

*Farmer*, 511 U.S. at 842-844. The Court established a standard of "subjective recklessness as used in the criminal law" as the test for deliberate indifference under the Eighth Amendment. *Id.* at 839-40. To the extent that there are no disputed issues of material fact with regard to any defendant's claims, we can review that defendant's claims on appeal. Upon review, to the extent that plaintiff can demonstrate that any defendant acted with deliberate indifference to a substantial risk of harm, that defendant is not entitled to qualified immunity.

We evaluate each of the three defendants here in turn. Defendants concede knowledge of the risk posed by Frezzell and argue only that the steps taken to address that risk were constitutionally adequate. First, we conclude that, based solely on the undisputed facts in this case, defendant Stratton took steps sufficient for the court to hold, as a matter of law, that he was not "deliberately indifferent" to the risk of danger to plaintiff. Defendant Stratton was aware of the danger posed by Frezzell, and took steps to address that danger. It is undisputed that Stratton conferred with Kemp before Kemp left his shift. At that point, Stratton's only information regarding Frezzell and plaintiff came from Kemp, who reported that Frezzell had "harassed" plaintiff but did not indicate that any physical attack had occurred. In addition, when Stratton asked if segregation was appropriate, Kemp answered that it was not. We cannot find that defendant Stratton was required to override the judgment of the officer who had been handling the situation directly, particularly when he was not given any information to indicate the existence of a physical threat to plaintiff. After the 4:30 p.m. incident on July 12 in which Frezzell grabbed plaintiff in plaintiff's cell, Stratton did take further action to segregate the two inmates by approving cell isolation for Frezzell. As one of three possible choices for segregating Frezzell from plaintiff, Stratton's choice of cell isolation was not a reckless approach to keeping Frezzell away from plaintiff. Although ultimately that solution was not sufficient to protect plaintiff, Stratton could not reasonably have foreseen that other officers would permit Frezzell to leave his cell after the cell isolation had been imposed. Because plaintiff does not dispute any of the facts relied upon here, we conclude that this court has jurisdiction to review defendant Stratton's claim and that the district court erred in not granting qualified immunity to defendant Stratton.

We cannot hold, however, that as a matter of law, defendant Kemp is entitled to qualified immunity. Rather we conclude that there are genuine issues of material fact which preclude review of this claim. It is undisputed that Kemp discussed the July 11 incident with plaintiff on July 12, specifically ordered

Frezzell to stay away from plaintiff, told other corrections officers that if they saw Frezzell near plaintiff they should take appropriate action, and told defendant Stratton about the incident as Stratton began the next shift. There are material factual disputes, however, which could impact a jury's decision. In particular, Kemp argues that plaintiff offered only vague complaints that Frezzell was harassing plaintiff from Frezzell's own cell doorway and that plaintiff never said that Frezzell physically assaulted or threatened to kill her. (J.A. 986-88.) Defendant Kemp argues that he understood the incident to have involved only minor harassment, thus not deserving of an order isolating Frezzell. In contrast, plaintiff states that she told Schweitzer specifically about the physical attack and threats and that defendant Kemp told plaintiff that Schweitzer "already told me" all of the details. (J.A. 747-48.) In addition, there appears to be a factual dispute in the record as to whether defendant Kemp identified plaintiff and Frezzell by name to defendant Stratton or only indicated that an incident between two unidentified inmates had occurred. (J.A. 574, 1013.) If defendant Kemp did not name the parties involved, a reasonable jury could conclude that defendant Kemp's efforts to protect plaintiff were not sufficient and were a proximate cause of the second assault. Thus, we make no substantive finding as to the sufficiency of defendant Kemp's actions. We rule only that we are precluded from reviewing defendant Kemp's claim because genuine issues of material fact are in dispute.

Finally, we conclude likewise that there are genuine issues of material fact which preclude review of defendant Bowles' claim. Plaintiff points to several disputed facts regarding defendant Bowles as evidence that this court lacks jurisdiction to hear this appeal. (Pl.'s Br. 19-21.) In particular, plaintiff argues that the parties have offered conflicting stories as to whether defendant Bowles was deliberately indifferent to plaintiff's safety when she let Frezzell out to go to the shower, as to whether Bowles told plaintiff that Frezzell was out of his cell, and as to plaintiff's reaction if and when Bowles told plaintiff that Frezzell was out of his cell. In addition, plaintiff points to differences in the facts offered by the parties