**Timothy WILLIAMS–EL, Plaintiff,**

v.

**Barry MCLEMORE, et al., Defendants.**

No. CIV. 98–74042.

United States District Court,
E.D. Michigan,
Southern Division.

June 27, 2002.

Timothy Williams–El, Standish, MI, pro se.

Julia R. Bell, Assist. Atty. Gen., Lansing, MI, for defendants.

## MEMORANDUM OPINION AND ORDER

ANNA DIGGS TAYLOR, District Judge.

Plaintiff, Timothy Williams, is a state prisoner at Standish Maximum Facility in Standish, Michigan. Proceeding *pro se*, Plaintiff brought this civil rights action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights and federal law.

On January 10, 2000, this Court granted summary judgment in favor of Defendants. Pursuant to the Sixth Circuit Court of Appeal's Order of February 1, 2001,[1] on February 8, 2001, this case was reinstated at the District Court. This case is now before this Court on Defendants' Federal Rule of Civil Procedure 12(b)(6) motion for dismissal, or in the alternative. Rule 56 motion for summary judgment. For the

1. *Williams v. McLemore, et al.,* 10 Fed.Appx. 241 (6th Cir.2001).

reasons stated below, Defendants' motion must be GRANTED in part, and DENIED in part.

## I.

On January 13, 1998, Plaintiff was transferred to the Josephine McCallum Facility ("JMF"). Upon his arrival at JMF, Plaintiff handed an officer a handwritten note stating that he had enemies housed at JMF, that he feared for his life, and that he wanted protection. In the note, Plaintiff included the names of the enemies he feared. On the same day, prison staff placed Plaintiff in an administrative segregation unit at the neighboring State Prison of Southern Michigan ("SMI") until the matter could be investigated.

After two days in segregation, on January 15, 1998, Defendants Warr and Doe arrived at Plaintiff's cell to escort him to an interview with the Security Classification Committee ("SCC interview") to discuss Plaintiff's concerns. The defendant officers attempted to handcuff Plaintiff behind his back, as is standard procedure. Plaintiff explained that he could not be handcuffed behind his back using regular sized cuffs as he suffers from a deformity in his hands and arms that causes pain when he is handcuffed in the standard manner. The defendant officers then requested that Plaintiff produce "medical detail" documenting his need for special cuffing. Plaintiff did not produce such medical detail.

The officers then sought direction from Deputy Connie Anderson,[2] advising her of the Plaintiff's stated deformity and that Plaintiff refused to be handcuffed behind his back using regular sized cuffs. The officers later returned to Plaintiff's cell where they advised Plaintiff that if he refused to be cuffed in the standard man-

ner he would not be allowed to attend the SCC interview. Plaintiff refused and was therefore not taken to the SCC interview.

On January 16, 1998, due to Plaintiff's failure to attend the SCC interview, Plaintiff was ordered to vacate the cell and return to JMF. Plaintiff refused, explaining that he feared for his life if he returned to JMF. Due to his failure to follow the order, Defendants issued Plaintiff a misconduct ticket which resulted in a fourteen day detention at SMI. During his segregation, Plaintiff filed a grievance alleging that he should not have received the misconduct ticket because he only incurred the ticket to prevent his return to JMF. This grievance was denied at all stages.

On February 4, 1998, Plaintiff gave officers a note stating that he planned to "get" his enemies when he returned to JMF. Plaintiff specifically referred to the inmates who were the subjects of his request for protection. Prison staff construed this note as threatening behavior and thereafter detained Plaintiff for an additional thirty days. As with the first misconduct ticket, Plaintiff filed a grievance arguing that he improperly incurred the grievance as he wrote the note only to delay his transfer to JMF. He maintained further that he was improperly denied a hearing regarding his safety concerns. The grievance was denied at steps one and two of the grievance process.

On April 3, 1998, as the third step in the grievance process, Director Kenneth McGinnis reviewed Plaintiff's second step grievance report, which was prepared by Defendant William Bailey. In reviewing this report, Director McGinnis noted that Defendant Bailey was aware that Plaintiff was in segregation requesting protection and that Plaintiff needed special cuffs to

---

2. Deputy Connie Anderson was originally named as a Defendant to this action. Pres-

ently she is not a party to this action.

enable him to attend the SCC hearing. While Director McGinnis declined to address the misconduct tickets, he acknowledged Plaintiff's consistent complaint that he was improperly denied a hearing because he could not wear standard restraints. Director McGinnis instructed then SMI Warden Defendant Barry McLemore to insure that further action be taken on Plaintiff's safety concerns.

Following Director McGinnis' report, Plaintiff did not receive a hearing regarding his security concerns. On August 26, 1998, Plaintiff was released back into JMF general prison population. On September 25, 1998, while participating in gym activities, an inmate stabbed Plaintiff in the back five times.

Following hospitalization, and pending his transfer to a different institution, prison officials returned Plaintiff to SMI and placed him in temporary protective segregation. While at SMI, Plaintiff claims that he was not allowed to attend the mini-law library although he requested that Defendant Libolt grant him such access. Plaintiff then submitted a grievance to Defendant Wozniak complaining of: (i) his lack of access to the law library, (ii) that requested books were being withheld from him, and (iii) that the main library staff failed to assist him in the preparation of this lawsuit.

Finally, Plaintiff claims that he was advised that Defendants Goff and Pass were the reasons that his transfer from JMF after the stabbing was not processed expeditiously. Plaintiff maintains that Defendants prolonged his transfer in retaliation for complaints he filed since the stabbing.

## II.

A motion for dismissal for failure to state a claim should be granted, as a matter of law, if it appears that the complaint, when reviewed in the light most favorable to Plaintiff and with every doubt resolved in Plaintiff's behalf, fails to state any valid claim for relief. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Gregory v. Shelby County, Tenn.,* 220 F.3d 433, 446 (6th Cir.2000). Importantly, a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A *pro se* complaint, however, is subject to a less stringent standard of review. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Summary judgment is to be granted when the moving party demonstrates that there is no genuine issue of material fact, and that the undisputed facts of record require that judgment enter, as a matter of law, on his behalf. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The question is whether the evidence is so one-sided that one party must prevail as a matter of law. *Id.* at 251–52, 106 S.Ct. 2505. To survive a motion for summary judgment, the non-movant must demonstrate that there is some dispute of fact as to "an element essential to that party's case, and on which that party will bear the burden of proof at trial...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The "burden on the moving party may be discharged by ... pointing out to the district court ... that there is an absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. 317, 325, 106 S.Ct. 2548 (1986). In making such a determination, this Court will examine any evidence in a light most favorable to the non-moving party. *Boyd, v. Ford Motor Company,* 948 F.2d 283, 285 (6th Cir.1991)

## III.

Defendants' motion to dismiss, or alternatively, for summary judgment, address-

es four of Plaintiff's claims: Eighth Amendment failure to protect; the Americans with Disabilities Act; First Amendment access to the courts; and retaliation.[3] Additionally, Defendants maintain that they are entitled to qualified immunity.

### A. *Eighth Amendment failure to protect*

 Plaintiff argues that Defendants failed to protect him from harm by returning him to JMF general population in spite of his claim to have enemies housed there. The law is clear that prisoners have an Eighth Amendment right to be free from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Deliberate indifference of constitutional magnitude may occur when prison guards fail to protect one inmate from attack by another. *Doe v. Bowles*, 254 F.3d 617, 620–21 (6th Cir.2001) (*quoting Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir.1990)).

 To prevail on an Eighth Amendment claim based on a prison official's failure to protect an inmate from harm, Plaintiff must show that the prison official was "deliberately indifferent" to a substantial risk of harm. *Farmer*, 511 U.S. at 828, 114 S.Ct. 1970. A prison official is "deliberately indifferent" when he subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk. *Id.* at 837, 114 S.Ct. 1970. Although Plaintiff bears the burden of proving the official's subjective knowledge, this element is subject to proof by the usual ways. *Id.* at 842, 114 S.Ct.

1970. Thus, the Court noted that it is permissible for reviewing courts to infer from circumstantial evidence that a prison official had the requisite knowledge of a substantial risk. *Id.* Moreover, a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. *Id.; LeMarbe v. Wisneski*, 266 F.3d 429, 436 (6th Cir. 2001). The Court warned that a "prison official may not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly expected to exist." *Farmer*, 511 U.S. at 843, 114 S.Ct. 1970.

### 1. *Defendants' knowledge*

 Defendants argue that because Plaintiff refused to wear restraints or produce medical justification for his refusal, the Defendant officers were unable to escort Plaintiff to the SCC hearing for a review of his claims. Plaintiff's claim was therefore not substantiated. Further, none of the Defendants were on notice that Plaintiff faced a substantial risk of harm and Plaintiff's refusal to wear restraints prohibited any Defendant from drawing such an inference. Because Defendants lacked the subjective perception of a substantial risk to Plaintiff's safety. Defendants argue that they cannot be found deliberately indifferent to Plaintiff's safety.

In contradiction to Defendants' assertion that they lacked knowledge of a substantial risk. Plaintiff cites several instances which, he argues, allowed Defendants to at

---

**3.** In response to Defendants' motion for summary judgment, Plaintiff concedes that his claim is "now focused on two basis for relief: deliberate indifference in the failure to provide him protection and the violation of the ADA which resulted in his being denied a hearing on his request for protection. Additionally, he argues a known pervasive risk of harm existed at the facility." (Pl.'s Resp.Br. at 4.) Plaintiff's response brief addressed only these issues. Therefore, this opinion addresses only Plaintiff's Eighth Amendment failure to protect and ADA claims. The First Amendment access to the court and retaliation claims will be dismissed. All other claims remain intact.

least infer that Plaintiff faced a substantial risk of harm. First, Plaintiff informed prison staff, in writing, that he had enemies at JMF, and specifically named those enemies. To investigate Plaintiff's concerns, prison officials transferred Plaintiff to a segregated facility where he was to be interviewed regarding his safety concerns. Second, Plaintiff maintains that he incurred two misconduct tickets in an effort to remain in the segregated facility, away from his enemies. One of the misconduct tickets for "threatening behavior" involved a note that named Plaintiff's two enemies and indicated that he would "get" them. The second misconduct ticket Plaintiff incurred because he refused to leave segregation when ordered to do so. In both instances Plaintiff contested the misconduct tickets arguing that his acts were motivated solely out of concern for his safety and his desire for a proper SCC hearing. Third, upon reviewing Plaintiff's second step grievance Plaintiff filed in response to the misconduct tickets. Director Kenneth McGinnis instructed prison staff to accommodate Plaintiff's needs and see that he get a hearing on his safety concerns. Plaintiff contends that these instances alerted Defendants to the fact that Plaintiff clearly faced a substantial risk of harm.

### 2. *Defendants' response*

■ Defendants argue that based on the information they had regarding Plaintiff's safety concerns, the steps taken to address the situation were adequate. The *Farmer* Court held that even if Defendants perceived a substantial risk of serious harm to Plaintiff, Defendants may still prevail if they responded "reasonably to the risk, even if the harm ultimately was not averted." 511 U.S. at 844, 114 S.Ct. 1970. If Defendants' response was unreasonable, then Defendants will be found to have disregarded the risk. *See Comstock v. McCrary,* 273 F.3d 693, 707 (6th Cir.

2001). Defendants responded to Plaintiff's safety concerns by placing him in temporary segregation until prison officials could conduct a hearing regarding Plaintiff's concerns. After Plaintiff failed to attend the SCC hearing prison staff subsequently returned Plaintiff to JMF. This appears to be the extent of Defendants' response to any risk of harm Defendants perceived.

Plaintiff presents evidence that this response was, in fact, not adequate to address the harm posed. Plaintiff informed Defendants Warr and Doe of his special cuffing needs when the officers arrived at Plaintiff's cell to escort him to the SCC interview. Defendant Warr stated that Plaintiff told him that because of his deformity he would not be handcuffed in front of his body using standard cuffs. It is uncontroverted that the officers then relayed that information to Deputy Anderson who refused to permit Plaintiff to be cuffed as he requested. At this point, Defendants took no steps to confirm that Plaintiff indeed needed special cuffing. Plaintiff's prison file is replete with documentation concerning his physical limitations due to his deformity.

Moreover, despite Plaintiff's request for special cuffing, Deputy Anderson concluded that Plaintiff's refusal to attend the interview indicated that "he is not serious about wanting protections" and that Plaintiff did not wish to proceed with the process and should be returned to JMF. (Notice of Intent Investigation for Protection of 1/5/98.)

Finally, Director McGinnis instructed prison staff to accommodate Plaintiff's needs and see that he get a hearing on his safety concerns. Director McGinnis stated: "[Williams] has a physical impairment which calls for special cuffs to be used for handcuffing . . . . [a] copy of this grievance response will be forwarded to the Warden's office to insure that appropriate ac-

tion is taken on this issue." (Third Step Grievance Response of 4/3/98 at 2.) Despite these instructions, Plaintiff did not receive a hearing. Defendants do not dispute that they failed to follow this directive.

▋ As to Plaintiff's Eighth Amendment claim, Plaintiff has alleged sufficient facts from which a trier of fact could conclude that Defendants subjectively perceived a serious risk to Plaintiff's safety. Defendants cannot escape a finding of his subjective knowledge of risk just because they declined to confirm inferences of risk. *Comstock,* 273 F.3d at 706. A jury may find that Defendants were simply negligent in not allowing Plaintiff a hearing regarding his safety concerns, or a jury might find that Defendants conduct was not a reasonable response to an admittedly known risk to Plaintiff. Accordingly, this Court must deny Defendants motion for dismissal, or alternatively, summary judgment as to Plaintiff's failure to protect claim.

## B. *Americans with Disabilities Act*

▋ Plaintiff contends that Defendants violated the Americans with Disabilities Act ("ADA") by failing to provide him with large cuffs for his transport to the SCC interview. Without such accommodation he was unable to attend and participate in the interview which, Plaintiff argues, amounted to discrimination due to his disability. Defendants seek dismissal of Plaintiff's ADA claim arguing that Plaintiff has not established that he is a person with a "disability" for purposes of the ADA. Specifically, Defendants contend that Plaintiff has not demonstrated that his tumors substantially limit one or more major life activities on the date he refused to be handcuffed for escort to the SCC interview.

The ADA provides, in pertinent part, that "no qualified individual with a disabili-

ty shall, by reason of such disability, be excluded from participation in or be denied benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Essentially, to establish a violation of the ADA, a litigant must show that (i) he or she is a qualified individual with a disability; (ii) that he or she was either excluded from participation in or denied benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by a public entity; and (iii) that such exclusion, denial of benefits, or discrimination was by reason of the litigant's disability. 42 U.S.C. § 12132.

The phrase "qualified individual with a disability" requires that the litigant meet the essential eligibility requirement for participating in the program, with or without reasonable accommodation. *Love v. Westville Correctional Center,* 103 F.3d 558, 560 (1996). The ADA defines disability as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of an impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102. Thus, the statute gives a plaintiff three potential avenues to follow in proving he is disabled within the meaning of the act.

Plaintiff suffers from a congenital deformity known as Kasabach–Merritt Syndrome causing, among other things, his right hand to be severely curled inward at the wrist. Plaintiff was born with this deformity; and it is visible to the naked eye. The Syndrome causes tumors in the hands and arms that cause pain when, for example, these extremities are improperly positioned. Plaintiff's prison records are replete with examinations, special accommodation notices, and recommendations by prison medical personnel concerning the

limitations resulting from Plaintiff's deformity.

Plaintiff, at the very least states a claim under the ADA. Whether his deformity is a disability as defined by the ADA is a disputed question of fact, inappropriate for a summary judgment ruling. Accordingly, the Court must deny Defendants motion as to the ADA claim.

## IV.

Finally, Defendants assert that, in any event, the doctrine of qualified immunity shields them from liability for civil damages in this case. Defendants argue that they are entitled to qualified immunity as Plaintiff failed to demonstrate the violation of any constitutional and statutory rights. Defendants contend that Plaintiff's complaint merely establishes the following: that he refused standard restraints; disobeyed a direct order, issued a written threat, had access to a law library, was placed in protective segregation, and was transferred to another facility.

To overcome a claim that Defendant prison officials are entitled to qualified immunity, the court must engage in a two-part, sequential analysis; the court must determine (1) whether the plaintiff has alleged facts which, when taken in the light most favorable to her, show that the defendant-official's conduct violated a constitutionally protected right; and if the first question is answered in the affirmative, (2) whether that right was clearly established such that a reasonable official, at the time the act was committed, would have understood that his behavior violated that right. *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir.2001) (*citing Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

Plaintiff's complaint, when assumed to be true, laid the foundation for a finding that Defendants' conduct violated Plaintiff's rights under the Eighth Amendment and the ADA. In the Eighth Amendment failure to protect context, to the extent that Plaintiff can demonstrate that Defendants acted with deliberate indifference to a substantial risk of harm, those Defendants are not entitled to qualified immunity. *Doe v. Bowles,* 254 F.3d 617, 621 (6th Cir.2001). Plaintiff, on several occasions, told several different officials, in myriad contexts that he feared for his safety. Plaintiff did not receive a proper hearing on the matter. Instead, he was sent back to JMF general population where he was subsequently stabbed. In this situation, it is not a stretch to find that after Plaintiff's constant requests for help and a specific directive from an official regarding those requests, a reasonable official would have investigated the matter further. The Eighth Amendment right of an inmate to be protected from an attack by a fellow inmate is well known rule of law, of which prison officials are intimately aware.

As to Plaintiff's ADA claim, Plaintiff has alleged facts sufficient to deny Defendants qualified immunity. Plaintiff requested special cuffing for his obvious deformity yet he was denied the cuffing he requested and was not permitted to attend the SCC interview, again, against the judgment of at least one prison official. The prohibitions of the ADA are such that a reasonable official would have known that the conduct described herein violated the ADA.

Accordingly, this Court cannot conclude, as a matter of law, that the Defendants are entitled to qualified immunity.

## V.

For the reasons detailed above, as a matter of law, this case does not merit dismissal and Defendants are entitled to partial summary judgment only.

Now, therefore.

IT IS ORDERED that Defendants' motion for summary judgment is GRANTED as to Plaintiff's First Amendment and retaliation claims; and DENIED as to Plaintiff's Eighth Amendment failure to protect and ADA claims.

IT IS FURTHER ORDERED that discovery, having previously been stayed pending the outcome of Defendants' dispositive motions, is hereby re-opened.

**IT IS SO ORDERED.**